IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Equitymax, Inc.,

          Plaintiff,

                                  Case No. 1:25-cv-1938-MLB

v.

Parkway Law Group LLC,

          Defendant.

_____/

**OPINION & ORDER**

This is a professional negligence case. Defendant Parkway Law Group LLC moves to dismiss EquityMax, Inc.'s claim for professional negligence. (Dkt. 2.) EquityMax opposes. (Dkt. 5.) The Court grants the motion.

**I.  Background**

In 2022, non-party Anthony Henry executed a contract to sell real property in Fulton County, Georgia to non-party Michael Brown. (Dkt. 1-1 ¶ 3.) The closing attorney retained Defendant Parkway, a law firm, to close the transaction. (*Id.* ¶¶ 3, 4.) The day before closing, Henry and Brown assigned the contract to non-party Oceans Exotic so that company

could replace Brown as the buyer. (*Id.* ¶ 5; 1-1 at 30.)  Henry also executed a limited warranty deed conveying the Property to Oceans Exotic. (*Id.* ¶ 7.)  They agreed Parkway would not record the deed until Oceans Exotic performed certain contractual obligations.  (*Id.* ¶ 8.)  Oceans Exotic failed to do that. (*Id.* ¶ 9.)  Nevertheless, in January 2023, Parkway mistakenly recorded the deed in Fulton County. (*Id.* ¶ 10.)  After realizing its mistake, Parkway executed an Affidavit of Mistakenly Recorded Deed but then accidentally recorded that document in Gwinnett County. (*Id.* ¶¶ 11, 12.)

In March 2023, Oceans Exotic sought a loan secured by the property from Plaintiff EquityMax. (*Id.* ¶ 13.)  During due diligence, EquityMax obtained a title report for the Property and learned that—according to Fulton County records—Oceans Exotic held title in fee simple. (*Id.* ¶ 15.)  Relying on that information, EquityMax loaned Oceans Exotic $350,000. (*Id.* ¶ 17.)  As security, Oceans Exotic executed a Commercial Deed to Secure Debt, conveying legal title to EquityMax. (*Id.* ¶ 18.)

Oceans Exotic defaulted. (*Id.* ¶ 23.)  When EquityMax began a non-judicial foreclosure of the Property, it discovered Henry's continued ownership of the Property. (*Id.* ¶ 25.)  Henry filed an emergency petition

2

to quiet title, seeking an order quieting title to the Property and removing EquityMax's security deed. (*Id.* ¶ 26.) EquityMax sued Parkway in state court, bringing a single claim for professional negligence. (*Id.* ¶¶ 27–33.) Parkway removed to this Court and now moves to dismiss. (Dkts. 1, 2.)

## II.   Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The Court, however, may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  At the motion-to-dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most

favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). A complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," however, does not satisfy this standard. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. Discussion

To maintain a cause of action for professional negligence under Georgia law, a plaintiff must establish (1) the defendant owed him or her a legally cognizable duty to conform to a certain standard of conduct, (2) the defendant breached that duty, and (3) the breach damaged the plaintiff. *Martha H. West Trust v. Market Value of Atlanta*, 584 S.E.2d 688, 690 (Ga. App. 2003). "Absent privity between the plaintiff and the professional, generally, the professional cannot be sued for professional negligence by a third party." *Smiley v. S & J Invs., Inc.*, 580 S.E.2d 283, 286 (Ga. App. 2003). That's because the duty to conform to a standard of conduct arises from privity. *Id.* (Recognizing duty of care in professional negligence claim traditionally arises from privity). EquityMax agrees it was neither a Parkway client nor otherwise in privity with Parkway. (Dkt. 5 at 24.) Nevertheless, EquityMax argues Parkway's duty arose

under Georgia's law of negligent misrepresentation, which can extend a professional's liability beyond those with whom he or she is in privity to others who rely on the professional's representations. (Dkt. 5 at 11.)

Plaintiff is right about the law. In *Robert & Co. Associates v. Rhodes-Haverty Partnership*, the Georgia Supreme Court extended professional liability beyond privity for the first time, allowing a third party to the professional relationship to pursue a claim for negligent misrepresentation.[1]  300 S.E.2d 503 (Ga. 1983). The court adopted Section 552 of the Second Restatement of Torts, holding:

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was *manifestly aware of*

---

[1] The elements of negligent misrepresentation under Georgia law are:

> (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such person's reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."

*Hardaway Co. v. Parsons, Brinckerhoff, Ouade & Douglas, Inc.,* 479 S.E.2d 727 (Ga. 1997). However, the parties' arguments largely focus on the threshold question of whether Parkway owed a duty to EquityMax such that it can bring a negligent misrepresentation claim. Because the Court finds that Parkway owed no duty, it need not delve into each element of the negligent misrepresentation claim.

> *the use* to which the information was to be put and *intended that it be so used*. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

*Id.* at 504 (emphasis added). The court later clarified its ruling in *Badische Corp. v. Caylor*, 356 S.E.2d 198 (Ga. 1987) and explained negligent misrepresentation liability extends only to people who the professional knows will rely on his or her information. Specifically, the Georgia Court explained:

> We specifically reject the plaintiffs' argument that the rule established in *Robert & Co.* ... expands professional liability for negligence to an unlimited class of persons whose presence is merely "foreseeable." Rather, professional liability for negligence ... extends to those persons, or the limited class of persons who the professional is *actually aware* will rely upon the information he prepared.

*Id.* at 200 (emphasis added.) Thus, to state a claim under the exception "[recognized by] *Robert* and *Badische*, a non-client must plead facts sufficient to show the professional firm had actual knowledge that its work was prepared for a particular transaction between the client and a known third party, or a 'limited class' of third parties." *Travelers Cas. & Sur. Co. of Am. v. Reznick Group, P.C.*, 2007 WL 9735814, at *4 (N.D. Ga. Mar. 26, 2007), aff'd, 271 F. App'x 833 (11th Cir. 2008).

The crux of the dispute is whether EquityMax was a "known third party" or part of a "limited class of third parties" that Parkway was "actually aware" would rely on the mistakenly recorded deed. (Dkt. 2 at 10–12; Dkt. 5 at 12–21; Dkt. 6 at 2–10.) If not, Parkway's duty of care did not reach EquityMax and it cannot bring a claim for negligent misrepresentation under the privity exception recognized by *Robert*.

EquityMax does not allege Parkway was "actually aware" it would rely on the deed Parkway filed, but instead asserts Parkway knew "lenders, such as EquityMax, … rely on the accuracy of status of title when deciding to loan money to borrowers who offer real property for those loans." (Dkt. 1-1 ¶ 29.) In this sense, EquityMax relies on a theory that it belonged to a "limited class" of third parties "for whom the information supplied by Parkway was intended." (Dkt. 5 at 16); *see Badische Corp.*, 356 S.E.2d at 200. EquityMax cites three cases as support for its argument Parkway had actual awareness that a class of third parties, including EquityMax, would rely on the recorded deed.[2]

---

[2] EquityMax also relies on *Bates & Assoc., Inc. v. Romei*, 426 S.E.2d 919 (Ga. Ct. App. 1993), but that case does not help. In that case, the appellate court merely concluded the trial court improperly applied the law announced in *Robert* and incorrectly found the plaintiff did not rely

These cases, however, do little to show Parkway's knowledge of EquityMax crossed the line from foreseeability (which cannot support liability) to actual awareness (which can).

EquityMax first relies on *Southeast Consultants, Inc. v. O'Pry*, 404 S.E.2d 299 (Ga. Ct. App. 1991). In that case, an engineer negligently performed a percolation test for a home builder prior to the installation of a septic tank for a home under construction. *Id.* at 300. After noticing a "noxious condition" coming from the septic tank, the homebuyer sued the engineer for professional negligence. *Id.* Notwithstanding lack of privity, the Court of Appeals upheld a verdict for the homebuyer because "where [an] engineer *knows* that prospective purchasers could rely on his report, a lack of privity will not shield him from liability to the foreseeable prospective purchasers." *Id.* (emphasis added.) EquityMax analogizes *O'Pry* to this case. But there are key differences. While the engineer in *O'Pry* did not know the specific identity of the eventual buyer, he was "actually aware" a purchaser would rely on his report. Indeed, the *only*

---

on the defendant's representations. It did not discuss the "class of persons" language from *Badische* or otherwise suggest a closing attorney knows certain creditors will rely on their recorded deeds.

8

reason the engineer performed the percolation test was to enable the completion of the new home and its sale to a third party. There was no uncertainty in *O'Pry* as to how the professional's work would be used or who would rely on it. To fall within this case, Plaintiff would have to allege—at the very least—that Parkway knew someone would extend a loan to Oceans Exotic based on the mistakenly recorded deed. Plaintiff has not alleged such knowledge and could not do so plausibly. Thus, even if *O'Pry* stands for the proposition that a professional need not know the exact identity of the third party, it does not displace *Badische*'s requirement that a professional have actual knowledge that a third party will rely on his or her representations.[3]

EquityMax also relies on *Reidling v. Holcomb,* 483 S.E.2d 624, 625 (Ga. Ct. App. 1997), to argue Parkway had actual awareness a lender like

---

[3] Plaintiff also cites to *First Financial Savings & Loan Assoc. v. Title Ins. Co. of Minnesota* as support for the proposition that "closing attorneys can be liable to assignees of loan packages even if they did not know the specific identity of the intended assignee." (Dkt. 5 at 17); 557 F.Supp. 654, 660 (N.D. Ga. 1982). This case, however, predates *Robert* and *Badische*. In any event, the Court does not disagree that the professional need not know the exact identity of the third party. But they must be actually aware that a specific class of third parties *will* rely on their representations.

9

EquityMax would rely on its recordation because "the sole purpose and effect of recordation … is to afford [third] parties constructive notice of the existence of [a] deed." (Dkt. 5 at 14–16, 18, 20.) EquityMax essentially argues that, because Parkway knew generally why it records deeds, "it [was] foreseeable that lenders relying on the accuracy of the deed records would be damaged." (Dkt. 5 at 18.) But even if *Reidling* suggests it is generally foreseeable that future creditors will rely on a publicly recorded deed, *Badische* explicitly held that foreseeability alone is not enough. 356 S.E.2d at 200. There is no doubt Parkway understood the purpose of recording the deed was to provide constructive or actual notice to potential third parties, including lenders. But that understanding does not rise to the level of actual awareness required for liability to a third party under *Badische*. *See id.* Parkway had to know, specifically, that the purpose of recording the deed was for its use by a known third party or class of third parties in conjunction with a "particular transaction." *See Reznick Group*, 2007 WL 9735814, at *4. To extend liability to anyone who might rely on the deed simply because Parkway generally knew people rely on recorded deeds would expand

10

professional liability for negligence into the realm of foreseeability—a result the Georgia Supreme Court specifically rejected.

Finally, Plaintiff cites *Neidiger/Tucker/Bruner, Inc. v. SunTrust Bank*, 530 S.E.2d 18 (Ga. Ct. App. 2000), arguing Parkway's "duty to comply with Georgia law governing the purpose and proper recording of deeds made it foreseeable that lenders relying on the accuracy of the deed records would be damaged by a breach of that duty." (Dkt. 5 at 18.) Once more, Plaintiff applies the wrong standard. Even if Parkway had a statutory duty and that duty made EquityMax's reliance foreseeable, mere foreseeability of third-party reliance is insufficient. *Badische*, 356 S.E.2d at 200. In any event, the *Neidiger* court found SunTrust, a "professional" sued for negligently preparing a stock certificate, owed a duty to the plaintiff, a third party, because O.C.G.A. § 11-8-204 and O.C.G.A. § 11-8-406 imposed a "specific [statutory] duty on those who prepare and issue stock certificates to accurately disclose restrictions on the transfer of the shares" to "person[s] without knowledge of the restriction." *Neidiger,* 530 S.E.2d at 21. EquityMax contends O.C.G.A.

11

§§ 44-2-1 and 44-2-20(c) impose similar statutory duties here.[4] (Dkt. 5 at 18.) But those statutes merely require deeds to be recorded in specific counties and, unlike O.C.G.A. § 11-8-204 and O.C.G.A. § 11-8-406, say nothing that could create a duty of care to third parties.

Taken together, these cases neither show Parkway had "actual awareness" EquityMax would rely on the negligently recorded deed nor that EquityMax belonged to a specific class of parties Parkway knew

---

[4] O.C.G.A. § 44–2–1 reads:

> "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land is located. A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed."

O.C.G.A. § 44–2–20(c) reads:

> (c) Affidavits referred to in subsection (a) of this Code section shall be filed by the clerk of the superior court of the county where the land is located and shall contain a caption referring to the current owner and to a deed or other recorded instrument in the chain of title of the affected land. The clerk of the superior court shall record such affidavits, shall enter on the deed or other recorded instrument so referred to the book and page number on which such affidavit may be recorded, and shall index same in the name of the purported owner as shown by such caption in both grantor and grantee indexes in deed records as conveyances of lands are recorded and indexed; and the clerk shall receive the same compensation therefor as for recording deeds to lands.

would rely on the deed.  To the contrary, EquityMax's broad allegation that Parkway knew "lenders … [would] rely on the accuracy of status of title when deciding to loan money to borrowers," (Dkt. 1-1 ¶ 29), "identifies neither the requisite 'limited class' of third parties relying on the [deed] nor the 'particular transaction' the information was prepared for."  *Reznick Group*, 2007 WL 9735814, at *4 (finding allegation that accountant "knew third parties would rely on its audits in deciding whether to extend credit" was too broad to find duty owed to a creditor of accountant's client).[5]  What's more, this allegation does not even suggest that Parkway knew lenders would rely on the deed in deciding to lend money to *Oceans Exotic*—just that Parkway knew lenders rely on deeds generally.  That allegation is little more than a truism.  It was certainly

---

[5] EquityMax also cites two other allegations that is says establish Parkway's awareness: ¶ 21 ("EquityMax's reliance on the Oceans Exotic Deed was reasonable and foreseeable because one of the purposes of recording a deed is to give notice to the world of the ownership of real property and encumbrances on the property.") and ¶ 31 ("It was reasonably foreseeable that subsequent potential lenders, such as EquityMax, would rely on the Oceans Exotic Deed as an integral part of determining whether the lender could fully secure the Property in exchange for a loan to Oceans Exotic.")  These allegations, however, clearly do not cross the line from "foreseeability" to "actual awareness."  *See Badische*, 356 S.E.2d at 200.

"foreseeable" that Oceans Exotic could use the Property as collateral in future transactions, but EquityMax's Complaint falls short of alleging Parkway actually knew that a "particular limited class" would rely on the deed in a "particular transaction." *Id.*; *contra Robert & Co.*, 300 S.E.2d at 504 (holding engineering firm liable to buyer when firm knew report was for specific purpose of encouraging buyers to purchase a building).

Extending liability to Parkway under these facts would "impermissibly broaden the scope of individuals to whom such firms could be liable to in connection with their routine activities." *Reznick Group*, 2007 WL 9735814, at *4. The Georgia Supreme Court has said the negligent misrepresentation exception to privity was not intended to "expand[] professional liability … to an unlimited class of persons whose presence is merely 'foreseeable.'" 356 S.E.2d at 200. In other words, the buck must stop somewhere, lest professional firms be "transform[ed] … into universal insurers of all their clients' financial transactions." *Reznick Group*, 2007 WL 9735814, at *4. The Georgia Supreme Court chose "actual awareness" to be that limit. EquityMax fails to plead plausibly that Parkway had that knowledge. As a result, it fails to state

a claim under Georgia's limited exception for professional negligence claims by non-clients.

## IV. Conclusion

In the light of the above, the Court **GRANTS** Defendant Parkway's Motion to Dismiss (Dkt. 2).

**SO ORDERED** this 30th day of January, 2026.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE